UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JERRY McLEOD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 7:20-cv-244 |
| | * | |
| MIKE DEWEY and  MIKE BASS, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' LOCAL RULE 56
STATEMENT OF UNDISPUTED MATERIAL FACTS**

COME NOW Mike Dewey and Mike Bass, Defendants in the above-styled case,

and file this their Statement of Undisputed Material Facts, pursuant to Local Rule 56,

showing this Court as follows:

1.      On July 25, 2019, Brooks County Sheriff's Department ("BCSC") deputy

Mike Bass responded to a complaint by a county road department worker, Randy

Jones, that Plaintiff was yelling and cursing at him. *Dkt. No. 55.*

2.      Bass was familiar with Plaintiff based on past complaints about him and

prior issues related to Plaintiff possessing animals, including allegations and charges

related to cruelty to animals. *Dkt. No. 55.*

3.      When Bass arrived on scene, he made contact with the complainant Jones

and was informed that Plaintiff had been yelling and cursing at Jones. *Id.* Jones told

Bass that this created a concern for his safety. *Dkt. No. 55*

4.      While on scene, Bass observed two dogs chained up on Plaintiff's property.

1

*Dkt. No. 55.*

5.      Bass called for Plaintiff but was unable to make contact with him while at the property. *Id.* Bass then left the property. *Dkt. No. 55.*

6.      Later that day, Bass received another complaint that Plaintiff was again yelling at Jones while Jones was working on Beasley Road. *Dkt. No. 55.*

7.      At that point, and as part of Bass's investigation into this latest complaint, Bass spoke to Captain Eugene Owen of the BCSD about Plaintiff. *Dkt. Nos.55, 56.* During that conversation, Bass was informed by Owen that that there was a Bond Order in place against Plaintiff related to cruelty to animal charges (Warrant Nos.: CR-17-158-207, CR-17-211). *Dkt. Nos.55, 56; see also Bond Order, Ex. A to Defs.' MSJ.*

8.      As a condition of the Bond Order, which was entered on March 21, 2017, Plaintiff agreed that he would not have any contact with animals, nor own, possess, or otherwise care for animals. *Dkt. Nos.55, 56; see also Bond Order, Ex. A to Defs.' MSJ.* The Bond Order stipulated that a violation of its terms may result in Plaintiff's arrest and detention. *Id.* Bass was aware of this Bond Order and its conditions prior to returning to the area of the incident around Plaintiff's property. *Id.*

9.      When Bass returned to the scene, he observed Plaintiff standing along the road a few feet from the county workers. *Dkt. No. 55.* McLeod was taking pictures and yelling at the county workers as they were working. *Id.* This interaction witnessed by Bass was consistent with the report by Jones as to Plaintiff's aggressive and

threatening behavior. *Id.*

10.     Bass personally witnessed Plaintiff behave in a aggressive and tumultuous manner toward the county workers, including Jones. *Dkt. No. 55.* Bass believes that Jones had a reasonable fear for his physical safety based on Plaintiff's language, actions and demeanor, which appeared to be intended to intimidate the workers into abandoning the public works project. *Id.*

11.     Bass then advised Plaintiff that he was under arrest for a violation of his bond condition for having dogs on his property. *Dkt. No. 55.* Bass did not charge Plaintiff with Disorderly Conduct in violation of O.C.G.A. § 16-11-39, but Bass believes that Plaintiff's threatening and aggressive conduct toward the county workers provided probable cause for an arrest on that basis, as well. *Id.* At the jail, as part of the booking process, Bass filled out the jail intake sheet and reviewed a written copy of the March 21, 2017 Bond Order. *Id.*

12.     During the booking process, Bass had a conversation with Brooks County Magistrate Judge David Crosby ("Crosby") about the charge against Plaintiff, which was based on a violation of the conditions of Plaintiff's Bond Order. *Dkt. Nos. 55, 57.*

13.     During the conversation, Crosby explained to Bass that he was unsure of the status of the Bond Order and whether it had been modified, extinguished, or superseded in some way because Crosby understood that Plaintiff was litigious and contested past charges against him. *Dkt. No. 57.* Crosby did not want to sign an arrest warrant or have Plaintiff detained if the Bond Order was no longer in place. *Id.*

Because Crosby was unsure of the status of the Bond Order, Crosby instructed Bass not to complete the booking process and told him to return Plaintiff home. *Id.*

14.　Plaintiff was returned back home. *Dkt. No. 55.*

15.　Plaintiff estimates that the entire incident (from arrest through returning back home) lasted about one hour. *Deposition of McLeod, at 68:2-6.*

16.　Shortly after the day of the incident, Crosby confirmed that on July 25, 2019 (the day of the incident), the Bond Order was, in fact, valid and in place and had not been modified, extinguished, superseded, voided, or altered in any way. *Dkt. No. 57.* Crosby's testimony is that, if he had known the correct status of the Bond Order on July 25, 2019, he would have executed an arrest warrant for Plaintiff for violating the terms of his bond conditions based on sworn testimony from Bass that Plaintiff was possessing dogs chained in his yard on the day of the incident. *Id.*

17.　As to the claim against Dewey, the evidence has established that Dewey never personally participated or directed any action or conduct that led to Plaintiff being taken into custody by Bass on July 25, 2019. *Dkt. No. 58.*

18.　Dewey did not have any role at all in the decision to charge, arrest, or detain Plaintiff on July 25, 2019. *Dkt. No. 58.*

19.　Dewey did not personally participate in, know about, or direct any action that led to Plaintiff being taken into custody on July 25, 2019, including any action involving Plaintiff being charged with violating the conditions of his Bond Order. *Dkt. No. 58.* Nor did Dewey personally participate in, know about, or direct any action

related to any decision to not pursue the charges and to release Plaintiff. *Id.*

20.    Plaintiff admits that he has been arrested "a bunch of times . . . [w]ith

these dogs[,]" both before and after the date of the subject incident. *Deposition of*

*McLeod, 14:9-13.*

> Q.    And do you recall the dates that you were arrested?
> A.    Well, I don't recall them all. I know they started back in 2016 and then
>        they arrested me again in 2017 and February the 23rd, I believe, of
>        March 1 of that date.
> Q.    In 2017?
> A.    Yeah. '18, '19, '20, '21. Whatever – Every year. Every time I file
>        something, they arrest me.

*Id.* at 14:23-25, 15:1-4.

21.    Plaintiff testified that it "sounds right" that the allegations in this case

relate to his arrest on July 25, 2019. *Deposition of McLeod,* at 31:18-25, 32:1-3. Plaintiff

agrees that he was taken into custody by Bass on the day he had the dispute with the

road department. *Id.* at 52:5-11.

22.    Plaintiff testified that he owned a dog named Buddy on the date of the

incident[1] and, because he has had dogs "taken" on several occasions, he does not know

exactly how many dogs he had at the time of the incident. *Deposition of McLeod,* at

43:13-23. Buddy was not professionally trained and had no certifications. *Id.* at 56:1-8.

Buddy was chained up on July 25, 2019 and, according to Plaintiff, "was always

chained up[.]" *Id.* at 57:18-21. Plaintiff considered Buddy an assistance dog because he

can bark when people approach his property because "they'd already stolen all my

---

[1]*Id.* at 34:2-13.

property and everything" and "you need some notice before somebody comes right to

your door." *Id.* at 58:1-8. By barking, that gives Plaintiff "time to mount some defense."

*Id.* at 58:12-15.

23.     Plaintiff had never seen Deputy Bass before the incident on July 25, 2019

and had no connection to him at that time. *Deposition of McLeod,*  at 35:11-17.

24.     According to Plaintiff, on the day of the incident, the county road

department was intending to perform some work in front of Plaintiff's property that

involved digging a ditch to address a pipe issue. *Deposition of McLeod,* at 36:10-25,

37:1-10. Plaintiff claims that he told the county worker "to hell you are, you're not

digging anything out." *Id.* at 36:34-35.

25.     Plaintiff admits that there were two dogs chained on his property when

Deputy Bass responded to the scene. *Deposition of McLeod,* at 39:1-11.

26.     Plaintiff admits that on July 25, 2019, there was a criminal bond in effect

that prohibited Plaintiff from possessing any dogs.

> Q.     Okay. But at the time, on July 25th, 2019 there was –- a bond order in
>         place that prohibited you from having –-
> A.     That's right. Said I couldn't own any dogs, yeah.
> Q.     Okay. All right.

*Deposition of McLeod,* at 45:7-10.

27.     Plaintiff disagreed with the bond conditions because they sought to

restrict his ability to have animals.

> Well, they – See, they can't – The magistrate judge can't put these
> conditions on there. But they put some on there anyway. And I'm saying
> he has no authority over that and there's no ordinance requiring how

many animals one can have.

*Deposition of McLeod,* at 32:23-25, 33:1. According to Plaintiff, who freely admits he

has dogs and cats, he is "going to keep having animals." *Id.* at 33:6-13.

28.    When presented with the March 21, 2017 Bond Order, Plaintiff admits

that it was executed by his attorney and a judge, but claims that it previously had not

been enforced.  *Deposition of McLeod,* at 53:15.  Plaintiff understands that if a person

violates the condition of a bond order, they can be arrested for that violation.

Q.    I'm not asking you specifically. I'm asking you, if you violate a bond, it
      can result in your arrest and detention, correct?
A.    Well, technically, yes.

*Id.* at 59:25, 60:1-3.  But Plaintiff claims that he was free to violate the condition of his

bond order because "[t]he court had an opportunity to enforce it and they didn't enforce

it." *Id.* at 59:16-17.

29.    On or about January 23, 2023, Defendants served the RFAs on Plaintiff.

*Defendants' Request  for Admissions to Plaintiff, Ex.C to Memo. of Law in Support of*

*Defs.' MSJ.*

30.    Plaintiff failed to respond to the RFAs. *Declaration of B. Watkins, Ex. D*

*to Memo. of Law in Support of Defs.' MSJ.*

31.    The RFAs requested that Plaintiff admit the following facts:

1.    Admit that on or about March 21, 2017, you were released from
      custody pursuant to the Blanket Bond Order attached hereto as
      Exhibit "A".
2.    Admit that as of July 25, 2019, there had been no resolution of the
      criminal charges reflected on Exhibit "A".
3.    Admit that on July 25, 2019, you were subject to the conditions set

forth in the Blanket Bond Order attached hereto as Exhibit "A".

4.     Admit that on July 25, 2019, you owned, possessed, or were otherwise caring for one or more animals.

5.     Admit that on July 25, 2019, at least one dog was chained or tied up on your property.

6.     Admit that you were taken into custody by Mike Bass on July 25, 2019 for a violation of your bond conditions.

*Defendants' Request  for Admissions to Plaintiff, Ex.C to Memo. of Law in Support of*

*Defs.' MSJ.*

Respectfully submitted this 6th day of February, 2024.

> */s/ Brad Watkins*
> Bradley J. Watkins
> Georgia Bar No. 740299

> ***ATTORNEY FOR DEFENDANTS***

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
Brunswick, Georgia 31520
Telephone: (912) 264-8544
bwatkins@brbcsw.com

CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing. In addition, a copy of this filing has been emailed to pro se Plaintiff at the following address: jmcleod263@gmail.com

Submitted this 6th day of February, 2024.

/s/ Brad Watkins
Bradley J. Watkins
Georgia Bar Number: 740299

**ATTORNEY FOR DEFENDANTS**

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
Brunswick, GA 31520
(912) 264-8544