IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JERRY MCLEOD, | : |
|       Plaintiff, | : |
| v. | :    CASE NO.: 7:20-CV-00244 (WLS) |
| MIKE DEWEY and MIKE BASS, | : |
|       Defendants. | : |

## **ORDER**

As initial matter, the Court notes that the above-styled matter was reassigned from the late Honorable Hugh Lawson to the Undersigned in April of 2024. Plaintiff Jerry McLeod filed this *pro se* action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Doc. 1). Following an initial review of Plaintiff's Complaint, Judge Lawson concluded most of Plaintiff's claims were barred by the doctrine of *res judicata* or by the applicable statute of limitations; thus, Judge Lawson directed Plaintiff to file a recast complaint. (Doc. 22). Plaintiff then submitted a 142-page, 345-paragraph recast complaint, which Judge Lawson rejected as a shotgun pleading. (Docs. 24, 25). Judge Lawson again provided Plaintiff the opportunity to amend his complaint. (Doc. 25). Upon review of the Amended Complaint, Judge Lawson dismissed all but a single claim against Defendants Mike Dewey and Mike Bass for an alleged false arrest on July 25, 2019.[1] (Docs. 26, 27). Thus, Judge Lawson permitted Plaintiff to proceed on that one claim. (Doc. 27).

Pending before the Undersigned is Defendants' Motion for Summary Judgment. (Doc. 59). Previously, Judge Lawson provided Plaintiff notice of Defendants' motion for

---

[1] Plaintiff alleges in his Amended Complaint that he was unlawfully arrested on July 20, 2020. (Doc. 26, ¶ 28). Records produced by Defendants, however, clarify that the arrest took place on July 25, 2019. (Doc. 59-3, p. 1; Doc. 61, p. 31-32). When asked whether July 25, 2019, was the correct date of the arrest, Plaintiff responded, "That sounds right but I can't be sure." (Doc. 61, p. 32). Plaintiff further stated to defense counsel, "I'll take your word for it. I know you know what you're talking about." (*Id.* at p. 47).

1

summary judgment on February 6, 2024. (Doc. 62). To date, Plaintiff has not filed a response. After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Undersigned concludes there are no genuine issues of material fact as to any claim and **GRANTS** Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Jerry McLeod resides at 1675 Liberty Church Road in Boston, Georgia. (Doc. 61, p. 9). Plaintiff is well-known to law enforcement officials based, in part, on past charges of animal cruelty. (Doc. 55, ¶ 3; Doc. 56, ¶ 3). Plaintiff has also filed numerous lawsuits against county officials relating to his real and personal property. (Doc. 61, at 22– 23, 25– 28).

Defendant Mike Bass is an Investigator with the Brooks County Sheriff's Office ("BCSO"). (Doc. 55, ¶ 2). Around 11:00 a.m. on July 25, 2019, Investigator Bass was dispatched to Grooverville Road and Beasley Road, which is near Plaintiff's property. (*Id.* at ¶¶ 3, 8). The Sheriff's Office received a complaint that Plaintiff was yelling at Randy Jones, a Brooks County Road Department worker engaged in a project on Beasley Road. (*Id.*). Investigator Bass approached Jones upon arriving in the area. (*Id.* at ¶ 4). Jones reported Plaintiff "had been yelling and aggressively cursing at him . . . to stop the work being performed." (*Id.*). Jones expressed concern for his safety. (*Id.*).

Plaintiff admits to the verbal altercation with Jones. (Doc. 61, at 36). According to Plaintiff, the county road workers were preparing "to dig out the ditch . . . where [his] water line was." (*Id.*). The workers informed him they planned to dig the "pipe out from both sides of the road." (*Id.*). Plaintiff responded, "to hell you are, you're not digging anything out." (*Id.*). Plaintiff was angry because "the last time [the county] dug it out, it cost the county a thousand dollars to hire a man from Valdosta to come in here and weld a pipe together." (*Id.*). Plaintiff claims he had "an easement over that road." (*Id.* at 36–37).

After speaking with Jones, Investigator Bass proceeded toward Plaintiff's property. (Doc. 55, ¶ 5). Investigator Bass noticed two chained dogs. (*Id.*).[2] He called out to Plaintiff but received no response. (*Id.*). Investigator Bass then left. (*Id.*).

---

[2] Plaintiff does not deny the presence of the dogs but insists Investigator Bass could not have seen the dogs from the road. (Doc. 61, p. 39-40).

Later that day, Investigator Bass received a second call that Plaintiff was yelling at Jones. (*Id.* at ¶ 6). Before returning to Plaintiff's home, Investigator Bass spoke with Captain Eugene Owen, head of the Criminal Investigation Division of the BCSO. (Doc. 56, ¶ 4). Captain Owen alerted Investigator Bass to an active Bond Order for Plaintiff relating to pending charges for animal cruelty. (Doc. 55, ¶ 7; Doc. 56, ¶ 4). The Bond Order, issued by the Superior Court of Brooks County on March 21, 2017, includes a condition that Plaintiff not own, possess, or otherwise care for any animals. (Doc. 59-3, at 3). The Bond Order warns that failure to comply with the condition of the Bond may result in Plaintiff's arrest and detention. (*Id.*). Captain Owen told Investigator Bass he could arrest Plaintiff for a bond violation based on Bass' observation of two dogs on Plaintiff's property. (Doc. 56, ¶ 4).

Investigator Bass returned to Beasley Road where he encountered Plaintiff taking pictures and yelling aggressively at the county road workers. (Doc. 55, ¶ 8). Bass noted Plaintiff's conduct was consistent with the report that Plaintiff was acting in an "aggressive and threatening" manner toward Jones and the other county workers. (*Id.*). Bass stated "[i]t was [his] belief that Mr. Jones had a reasonable fear for his physical safety based on [Plaintiff's] language, actions[,] and demeanor which appeared to be intended to intimidate the workers into abandoning the public works project." (*Id.*).

Investigator Bass advised Plaintiff he was in violation of the Bond Order for having dogs on his property and placed Plaintiff under arrest. (*Id.* at ¶ 9). Bass attests that while he did not charge Plaintiff with disorderly conduct, in violation of O.C.G.A. § 16-11-39, Plaintiff's threatening and aggressive conduct toward the county road workers provided probable cause for an arrest on that basis as well. (*Id.*). Plaintiff claims Investigator Bass "didn't know what he was arresting me for." (Doc. 61, at 47). Plaintiff asked Bass, "does [Sheriff] Mike Dewey[3] know you're out here doing this?" (*Id.* at 48). Bass allegedly responded, "he's the one sent me out here." (*Id.* at 48–49). Sheriff Dewey denies any participation in or knowledge of the events leading to Plaintiff's arrest. (Doc. 58, ¶¶ 4-5).

---

[3] Defendant Mike Dewey is the current Sheriff of Brooks County, Georgia. (Doc. 58, ¶ 2). He was serving as Sheriff at the time of Plaintiff's arrest. (*Id.*).

Investigator Bass transported Plaintiff to the Brook County Jail without incident. (*Id.* at ¶ 10). Brooks County Magistrate Judge David Crosby met with Investigator Bass at the Jail to discuss Plaintiff's arrest. ((Doc. 57, ¶¶ 2, 4). Judge Crosby conveyed concern about the status of the Bond Order which formed the basis of Plaintiff's arrest. (*Id.* at ¶ 4).[4] Judge Crosby indicated his reticence to sign an arrest warrant and to detain Plaintiff if the Bond Order was no longer active. (*Id.* at ¶ 5). Judge Crosby instructed Investigator Bass to suspend the booking process and to return Plaintiff to his home. (*Id.*; Doc. 59-3, at 1). Bass arranged for another deputy to drive Plaintiff home. (Doc. 55, ¶ 11; Doc. 59-3, at 1; Doc. 61, at 68).

## STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant—here, Defendant—bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The

---

[4] Judge Crosby later confirmed the Bond Order remained valid on July 25, 2019, and that the Order had not been "modified, extinguished, superseded, voided, or altered." (Doc. 57, ¶ 6). Judge Crosby states in his Declaration, "If I had known the correct status of the Bond Order on July 25, 2019, I would have executed an arrest warrant for McLeod for violating the terms of his bond conditions based on the sworn testimony from Bass that McLeod was possessing dogs chained in his yard on the day of the incident." (*Id.*).

movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24.

After the movant has met their burden, the Court must determine "whether the evidence [submitted by Plaintiff] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the nonmoving party's favor. *L.S. by Hernandez v. Peterson*, 420 F. Supp. 3d 1307, 1314 (S.D. Fla. 2019). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. 2010) (citation omitted). To avoid summary judgment, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen*, 121 F.3d at 646. The Court, however, must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). At this stage, the Court does not make credibility determinations nor weigh the evidence. *Anderson*, 477 U.S. at 255. Ultimately, the inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at

5

251– 52. The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 447 U.S. at 322.

Moreover, in the instant case, the Court is cognizant of Plaintiff's *pro se* status. Indeed, *pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But even a *pro se* litigant must still comply with procedural rules and court orders. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Important to note, the leniency given to *pro se* litigants does not mean that the normal summary judgment standard is discarded, that the court accepts factual averments and contentions unsupported by the record, or that the court serves as a *de facto* counsel for plaintiff, rewrite his filings, or make arguments on his behalf to help him overcome the defendant's summary judgment challenges. *See Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013); *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)). Thus, "[w]hen a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required." *Nawab*, 553 F. App'x at 860.

## DISCUSSION

Defendants argue they are entitled to the shield of qualified immunity because Investigator Bass had probable cause to arrest Plaintiff for a violation of his bond conditions.[5] "A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity protects government officials "from liability

---

[5] Defendants also argue that absent proof of a causal connection between any action taken by Sheriff Dewey and the alleged constitutionality of Plaintiff's arrest, Plaintiff's false arrest claim against Sheriff Dewey fails as a matter of law. (Doc. 59, p. 20-23). Plaintiff claims Sheriff Dewey sent Investigator Bass to arrest Plaintiff. (Doc. 61, p. 48-50, 64-65). Sheriff Dewey denies having "any role at all in the decision to charge, arrest or detain Plaintiff on July 25, 2019." (Doc. 58, ¶ 4). Because the Court concludes there was probable cause for Plaintiff's arrest, the Court need not resolve any potential question of fact regarding Sheriff Dewey's alleged role in the arrest.

6

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks and citation omitted).

To receive qualified immunity, the official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). Here, there is no dispute that Investigator Bass was acting within his discretionary authority when he arrested Plaintiff. *See Crosby*, 394 F.3d at 1332 ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy."); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (concluding that a state trooper was clearly acting within the scope of his discretionary authority when he charged and arrested the plaintiff). Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is <u>not</u> entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Holloman*, 370 F.3d at 1264.

To succeed on his false arrest claim, Plaintiff therefore must first demonstrate that Defendants violated a constitutional right. Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." An arrest is a seizure, and the "reasonableness" of an arrest is "determined by the presence or absence of probable cause for the arrest." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim[;]" however, "[t]he existence of probable cause at the time of arrest . . .

7

constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

"Probable cause exists if the totality of the circumstances known to the officers could persuade a reasonable officer that there is a 'substantial chance of criminal activity' by the person who is arrested. *Davis v. City of Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)). Probable cause "is not a high bar" and "requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (alterations adopted and quotation omitted). When "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

To receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could have believed that probable cause existed to arrest." *Id.* (quotation marks and citation omitted). "Showing arguable probable cause does not . . . require proving every element of a crime." *Id.*

The undisputed evidence demonstrates Investigator Bass reasonably believed there was a Bond Order in place prohibiting Plaintiff from owning or possessing animals. (Doc. 55, ¶¶ 7, 10). Investigator Bass attests that on the date of Plaintiff's arrest, he observed two dogs tethered in Plaintiff's yard. (*Id.* at ¶ 5). Plaintiff does not deny the presence of the animals. (Doc. 61, at 39–40). Nor does Plaintiff deny the Bond Order restricted his ability to own, possess, or care for dogs. (*Id.* at 45). Thus, Plaintiff by his own admission was in clear violation of the Bond conditions and subject to arrest.

Considering the totality of the circumstances, there is sufficient evidence, even when viewed in the light most favorable to Plaintiff, from which a jury could conclude that Plaintiff violated the conditions imposed by the Bond Order. Therefore, the Undersigned finds that Defendants are entitled to summary judgment on their qualified immunity defense. Therefore, Defendant's Motion for Summary Judgment (Doc. 59) is **GRANTED**.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment (Doc. 59) is **GRANTED**. Plaintiff shall take nothing upon the Amended Complaint.

**SO ORDERED**, this 11th day of June, 2024.

                                              **/s/ W. Louis Sands**
                                              **W. LOUIS SANDS, SR. JUDGE**
                                              **UNITED STATES DISTRICT COURT**